UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

ROCKBROOK PLACE                    §
TOWNHOMES ASSOCIATION,             §
INC.                               §
                                   §
v.                                 §     CIVIL NO. 4:24-CV-1021-SDJ
                                   §
LIO INSURANCE COMPANY              §

## MEMORANDUM OPINION AND ORDER

This is an insurance-coverage dispute arising from alleged hail damage to
Plaintiff Rockbrook Place Townhomes Association, Inc.'s property. Before the Court
are Defendant and Counter-Plaintiff LIO Insurance Company's Opposed Motion to
Compel Appraisal and Motion to Abate Litigation Pending Resolution of Appraisal,
(Dkt. #17), Defendant's motions to set a hearing on the appraisal motion, (Dkt. #20,
#21), and the parties' Joint Motion to Extend Deadlines Set Forth in the Scheduling
Order, (Dkt. #30). After full consideration, the Court finds good cause and concludes
that the motion to compel appraisal and abate the litigation will be granted. As a
result, the motions to set a hearing on that motion and to extend certain deadlines
will be denied as moot.

### I. BACKGROUND

Plaintiff Rockbrook Place Townhomes, Inc. ("Rockbrook") owns property (the
"Property") in Lewisville, Texas, which is insured by Defendant LIO Insurance
Company ("LIO"). (Dkt. #7 ¶ 6). Following a hailstorm, Rockbrook submitted a claim
to LIO for alleged hail damage. (Dkt. #7 ¶ 8). LIO sent its engineer to investigate the

1

claim, who found that the Property "was not damaged by hail on the reported date of loss." (Dkt. #17 at 2–3). LIO then denied Rockbrook's claim. (Dkt. #17 at 3).

A few months later, Rockbrook requested that LIO reinspect the Property and demanded that LIO pay over $4.5 million to replace all the roofs on the Property. (Dkt. #17 at 3). LIO rejected that demand but agreed to reinspect the Property. Along with its engineer, LIO sent an independent adjuster to reinspect the Property. (Dkt. #17 at 3). They came to the same conclusion—no covered hail damage. So LIO denied Rockbrook's claim again. (Dkt. #17 at 3).

After this second denial, Rockbrook retained counsel and sent LIO a "notice letter" of its potential legal claims and actual damages. (Dkt. #17-4 at 2–7). In the notice letter, Rockbrook made clear that it did "not wish to litigate this matter" and would be "happy to engage in settlement negotiations." (Dkt. #17-4 at 7). In response, LIO requested an opportunity to reinspect the Property under Tex. Ins. Code § 542A.004. (Dkt. #17 at 3). LIO then retained a new engineer to inspect the Property and a forensic weather consultant to analyze historical hailstorm data for the area. (Dkt. #17 at 3). Again, LIO's inspection team came to the same conclusion—no covered hail damage. (Dkt. #17 at 3–4). LIO therefore denied Rockbrook's claim for a third time. (Dkt. #17 at 3–4).

In its third denial letter, LIO invoked the appraisal process under Rockbrook's insurance policy, which allows either party to make a written demand for appraisal when the parties disagree on the amount of loss for a covered claim. (Dkt. #17 at 4).

Under that process, both parties must select an appraiser and notify the other party

of their selection within twenty days:

> If we and you disagree on the amount of loss, either may make written
> demand for an appraisal of the loss. In this event, each party will select a
> competent and impartial appraiser and notify the other of the appraiser
> selected within 20 days of such demand. The two appraisers will select an
> umpire. If they cannot agree within 15 days upon such umpire, either
> may request that selection be made by a judge of a court having
> jurisdiction. Each appraiser will state the amount of loss. If they fail to
> agree, they will submit their differences to the umpire. A decision agreed
> to by any two will be binding as to the amount of loss.

(Dkt. #17 at 4). But Rockbrook did not select an appraiser within twenty days of LIO's

demand. (Dkt. #17 at 5). Instead, it sued LIO in Texas state court. (Dkt. #17 at 6).

LIO then removed the case to this Court, (Dkt. #1), and now moves to compel

appraisal and to abate the litigation pending resolution of the appraisal, (Dkt. #17).

Rockbrook counters that LIO waited too long to demand appraisal and thus waived

its right to do so. (Dkt. #18 at 5). The motion is fully briefed and is therefore ripe for

review. (Dkt. #17, #18, #19).

## II. LEGAL STANDARDS

Appraisal clauses "provide a means to resolve disputes about the amount of

loss for a covered claim." *In re Universal Underwriters of Tex. Ins.*, 345 S.W.3d 404,

407 (Tex. 2011). "These clauses are generally enforceable, absent illegality or waiver."

*Id.* Because appraisals "can provide a less expensive, more efficient alternative to

litigation," *id.*, the Texas Supreme Court has held that appraisals "should generally

go forward without preemptive intervention by the courts," *State Farm Lloyds v.*

*Johnson*, 290 S.W.3d 886, 895 (Tex. 2009).

The right to demand appraisal may be waived. *See, e.g., JM Walker LLC v. Acadia Ins.*, 356 F.App'x 744, 748 (5th Cir. 2009). "Under Texas law, waiver is an affirmative defense, and the party seeking to defeat appraisal bears the burden of proof." *Id.* (citing *In re State Farm Lloyds, Inc.*, 170 S.W.3d 629, 634 (Tex. App.—El Paso 2005, no pet.)). To establish waiver, a party must show "either the intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right." *In re Gen. Elec. Cap. Corp.*, 203 S.W.3d 314, 316 (Tex. 2006) (citation modified).

Denial of an insured's claim does not necessarily constitute "intentional relinquishment" of the insurer's appraisal rights. *In re State Farm Lloyds*, 514 S.W.3d 789, 794 (Tex. App.—Houston [14th Dist.] 2017, no pet.). Indeed, courts "will not infer waiver where neither explicit language nor conduct indicates that such was the party's intent." *Universal Underwriters*, 345 S.W.3d at 410. That said, a party may waive its right to appraisal by unreasonably delaying its invocation of that right. *See id.* at 408.

But even when delay is shown, delay alone is insufficient to establish waiver. *Id.* at 411. The party opposing appraisal must also show that it has suffered some prejudice to its legal rights or financial position because of the delay. *Id.* Otherwise, "it makes little sense to prohibit appraisal when it can provide a more efficient and cost-effective alternative to litigation." *Id.* Thus, to establish waiver, a party must show that (1) an impasse was reached, and (2) the delay in demanding appraisal caused prejudice. *Id.* at 412.

Delay is measured from the point of impasse; that is, once the parties have reached an impasse, appraisal must be invoked within a reasonable time. *Id.* at 408, 410. An impasse is more than "mere disagreement" about the amount of loss. *Id.* at 410. Rather, an impasse is the breakdown of good-faith negotiations such that *both parties* understand that further negotiations would be futile. *Id.* at 409. Put another way, an impasse is a "mutual understanding that neither [party] will negotiate further." *Id.* at 410. So long as "one party genuinely believes negotiations to be ongoing," there is no impasse. *Id.* at 409.

### III. DISCUSSION

The Court's discussion proceeds in two parts. First, the Court must decide whether LIO waived its right to demand appraisal. After finding that LIO has not, the Court addresses whether this case should be abated pending resolution of the appraisal.

### A. Waiver of Appraisal

Rockbrook does not dispute that its insurance policy contains a valid appraisal provision. Accordingly, the sole question is whether LIO waived its right to invoke appraisal. The Court finds that LIO did not waive its appraisal rights.

Rockbrook's waiver defense fails for at least two reasons. First, Rockbrook has not shown that an impasse was reached before LIO invoked its appraisal rights. Without an impasse, Rockbrook cannot show unreasonable delay. Second, even if LIO's delay were unreasonable, Rockbrook has not shown that it suffered any prejudice from LIO's delay.

### i. Unreasonable delay

Rockbrook argues that the parties reached an impasse three times before LIO's appraisal demand. In essence, Rockbrook believes that each rejection it received from LIO for its insurance claim constitutes an impasse. These rejections include (1) LIO's first claim denial; (2) LIO's refusal to pay over $4.5 million for new roofs; and (3) LIO's second claim denial. In relation to LIO's appraisal demand, these alleged impasses occurred nineteen, sixteen, and eleven months prior, respectively. (Dkt. #18 at 6–9).

But none of these rejections reflect a "breakdown of good-faith negotiations" or suggest that LIO was "unwilling[] to negotiate further." *See Universal Underwriters*, 345 S.W.3d at 408–09. To the contrary, LIO's rejections and subsequent conduct show that good-faith negotiations were ongoing until LIO invoked its appraisal rights.

For the first claim denial, the parties' subsequent conduct is dispositive. To be sure, LIO's denial was premised on its finding that the Property had not been damaged by hail. (Dkt. #17-1 at 2). But when Rockbrook requested that LIO reinspect the property a few months later, it did so. In fact, LIO retained an independent adjuster for the reinspection. (Dkt. #17 at 3). If anything, this behavior shows that the parties continued to engage in reasonable conflict resolution and that LIO kept Rockbrook's claim under consideration. The Court therefore finds that the parties were not at an impasse when LIO issued its first denial.

The same is true for LIO's rejection of Rockbrook's $4.5 million demand. Nothing in LIO's rejection letter suggests that LIO was unwilling to negotiate further or that the parties had reached an impasse. Although LIO rejected Rockbrook's demand "at this time" because "no new information has been provided," LIO stated

6

that it "appreciate[s] the continued dialogue" and encouraged Rockbrook to forward any "data, reports, or documentation that speaks to causation." (Dkt. #18-3 at 1). Rockbrook describes this willingness-to-negotiate language as "illusory" and "obligatory" and contends that LIO didn't really mean what it said in its letter. (Dkt. #18 at 7–8). But LIO's conduct after sending the letter belies that contention: LIO reinspected the Property twice *after* sending the rejection letter. If, as Rockbrook suggests, LIO had no intention of negotiating further and was merely stringing Rockbrook along, it presumably would not have reinspected the Property. The parties were therefore not at an impasse then either.

The analysis is much the same for LIO's second claim denial. The letter LIO sent to Rockbrook demonstrates an intent to continue engaging in good-faith negotiations: Despite denying Rockbrook's claim, LIO expressed a willingness to "re-evaluate [its] coverage position based on any new information or allegations." (Dkt. #17-3 at 5); *see also* (Dkt. #17-3 at 2) ("Please note that new or additional allegations and/or facts beyond those presented could change LIO's position."). And as with the first letter, LIO backed up its words with actions by reinspecting the Property at least once *after* denying Rockbrook's claim the second time. In sum, the denials Rockbrook relies on show mere disagreement, not impasse, and are insufficient to constitute a "breakdown of good-faith negotiations." *Universal Underwriters*, 345 S.W.3d at 408–09.

Rockbrook's purported authorities to the contrary are unpersuasive, distinguishable, or both. For example, in each of the cases Rockbrook cites, the party

invoking appraisal did so *after* the lawsuit was filed—at which point the parties had clearly reached an impasse. *See Johnson v. Meridian Sec. Ins.*, No. 4:22-CV-456, 2024 WL 4430535, at *4 (N.D. Tex. Mar. 8, 2024) (appraisal invoked one year after lawsuit filed); *Sanchez v. Prop. & Cas., Ins. Co. of Hartford*, No. CIV. A. H-09-1736, 2010 WL 413687, at *2–3, *6 (S.D. Tex. Jan. 27, 2010) (appraisal invoked five months after lawsuit filed); *First Baptist Church Mineola Tex. v. Church Mut. Ins.*, No. 6:20-CV-403, 2021 WL 5332321, at *2 (E.D. Tex. June 4, 2021) (appraisal invoked seven months after lawsuit filed). By contrast, LIO invoked appraisal *before* Rockbrook sued. And as explained above, Rockbrook has failed to show that the parties reached an impasse before this litigation began.

For these reasons, Rockbrook has not shown that the parties reached an impasse before LIO invoked its appraisal rights. LIO's delay in seeking appraisal is therefore reasonable.

### ii. Prejudice

Even if LIO's delay in seeking appraisal were unreasonable, Rockbrook has not shown that it was prejudiced by that delay. *See Universal Underwriters*, 345 S.W.3d at 411. Rockbrook argues that it suffered harm to its financial position and to its legal rights because of LIO's delay.

First, Rockbrook argues that it suffered financial harm in the form of litigation-related expenses that it "would never have incurred" "[h]ad Defendant invoked appraisal timely after an impasse was reached" in February, May, or November of 2023. (Dkt. #18 at 12). But this argument ignores the reciprocal nature of the appraisal provision, which Rockbrook could have invoked at any time to avoid the

8

expenses it complains of here. As the Supreme Court of Texas has explained, it is difficult to show prejudice when the party alleging waiver could have demanded appraisal itself:

> [I]t is difficult to see how prejudice could ever be shown when the policy, like the one here, gives both sides the same opportunity to demand appraisal. If a party senses that impasse has been reached, it can avoid prejudice by demanding an appraisal itself. This could short-circuit potential litigation and should be pursued before resorting to the courts.

*Universal Underwriters*, 345 S.W.3d at 412. Because Rockbrook could have avoided the litigation-related expenses it incurred by invoking the policy's appraisal provision itself, these expenses were not prejudicial.

Second, Rockbrook argues that a party suffers legal harm "when [the other] party switches between litigation and arbitration for its own advantage," citing *Perry Homes v. Cull*, 258 S.W.3d 580 (Tex. 2008). (Dkt. #18 at 13). In that case, the court found waiver where a party invoked arbitration after "months of discovery" and "only four days before the trial setting." *Perry Homes*, 258 S.W.3d at 584. Those extraordinary circumstances are absent here. LIO demanded appraisal before this suit was filed and therefore could not have "switche[d] between litigation and arbitration for its own advantage" as Rockbrook suggests.

For these reasons, Rockbrook has also failed to show that it has been prejudiced by LIO's alleged delay in invoking appraisal.

## B. Abatement

Having concluded that Rockbrook's claims are subject to an appraisal, the Court now considers whether this case should be abated pending resolution of the appraisal. A federal district court may stay proceedings under its inherent power.

*Eon Corp. IP Holdings, LLC v. T-Mobile USA, Inc.*, No. 6:10-CV-379, 2012 WL 12911054, at \*1 (E.D. Tex. Feb. 2, 2012). In evaluating a motion to stay or abate proceedings to allow for completion of an insurance appraisal, the primary question is whether the stay will "aid judicial efficiency and economy." *Gonzalez v. Allstate Fire & Cas. Ins.*, No. SA-18-CV-283, 2019 WL 609781, at \*2 (W.D. Tex. Jan. 7, 2019) (quotations omitted); *see also Stutz Auto Serv., Inc. v. Universal Underwriters of Tex. Ins.*, No. 7:14-CV-505, 2014 WL 12599841, at \*1 (S.D. Tex. Sept. 30, 2014) ("[T]he decision to stay the suit pending appraisal is discretionary."). Courts must weigh motions to stay or abate proceedings "in light of the policy against unnecessary dilatory motions." *PJC Bros. v. S&S Claims Serv., Inc.*, 267 F.R.D. 199, 200 n.2 (S.D. Tex. 2010) (quoting 5C WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1360 (3d ed. 2004)).

LIO argues that "abating this suit until the appraisal concludes will promote judicial efficiency, save the parties time, money and resources, and allow the parties to properly focus on identifying the amount of loss, if any, of Plaintiff's property damage through the appraisal process." (Dkt. #17 at 14). Rockbrook responds that abatement will serve only to "delay the case." (Dkt. #18 at 15). Because the Court agrees that the appraisal could result in the prompt resolution of this controversy, and because judicial-efficiency concerns drive the abatement decision, the Court will grant the abatement until the appraisal process is complete.

\*     \*     \*

10

Appraisal clauses provide a less expensive, more efficient alternative to litigation for resolving insurance-claim disputes. And they are generally enforceable, absent illegality or waiver. Because LIO timely invoked its appraisal rights under the policy, Rockbrook must submit to the appraisal process before seeking judicial resolution of its claims.

## IV. CONCLUSION

For these reasons, it is **ORDERED** that Defendant and Counter-Plaintiff LIO Insurance Company's Opposed Motion to Compel Appraisal and Motion to Abate Litigation Pending Resolution of Appraisal, (Dkt. #17), is **GRANTED**.

It is further **ORDERED** that this case, including any pending deadlines, is **ABATED** until such time as the appraisal process is concluded and the appraisal panel has issued its final award.

It is further **ORDERED** that the parties shall provide joint status updates every sixty (60) days informing the Court of the progress of the appraisal and shall further notify the Court immediately upon completion of the appraisal process, with the first report due on **November 3, 2025**.

It is further **ORDERED** that LIO's motions to set a hearing, (Dkt. #20, #21), are **DENIED as moot**.

It is further **ORDERED** that the parties' Joint Motion to Extend Deadlines Set Forth in the Scheduling Order, (Dkt. #30), is **DENIED as moot**.

**So ORDERED and SIGNED this 3rd day of September, 2025.**

_____

SEAN D. JORDAN
UNITED STATES DISTRICT JUDGE